NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 10-4587

QVC INC; QHEALTH INC,
                                        Appellants,

v.

YOUR VITAMINS INC, d/b/a Procaps
Laboratories; ANDREW LESSMAN,

_____

On Appeal from the United States District Court
for the
District of Delaware
(C.A. No. 10-cv-00094)
District Judge: Honorable Sue L. Robinson

Submitted Under Third Circuit L.A.R. 34.1(a)
on July 14, 2011

Before: SLOVITER, FUENTES, AND FISHER, Circuit Judges.

(Opinion Filed: July 26, 2011)

FUENTES, Circuit Judge:

Plaintiff-appellants QVC, Inc., and Qhealth, Inc. (collectively, "QVC"), appeal the

denial of their request for a preliminary injunction against defendant-appellees Your

Vitamins, Inc., and Andrew Lessman (collectively, "Lessman"). For the reasons given,

we will affirm the decision of the District Court.

**I.**

Because we write primarily for the parties, we set forth only the facts and history that are relevant to our conclusion.[1]  Andrew Lessman owns a company called Your Vitamins, Inc., d/b/a Procaps Labs, which sells a product called "Healthy Hair, Skin, and Nails," as well as various products containing reservatrol.  He used to sell his vitamin products on QVC, but, several years ago, switched to QVC's rival, HSN.  Some time after the switch, QVC introduced a supplement called "Healthy Hair, Skin, and Nails" ("QVC's Healthy HSN"), the same name that Lessman uses for his own supplement.  QVC also sells several forms of a reservatrol supplement that compete with Lessman's versions.

In January 2010, shortly after the introduction of QVC's Healthy HSN, Lessman posted several blog posts on his website, complaining about what he perceived to be the unfairness of QVC's using the name of his product for its own.  In addition to complaining about QVC's conduct, Lessman alleged that (1) QVC's Healthy HSN is over 90% additives; (2) "there is a significant body of troubling research that connects hyaluronic acid, an ingredient in QVC's Healthy HSN, to cancer, that "it is totally useless and potentially harmful," and, while it "does not necessarily 'cause' cancer...credible research points to a relationship and mechanism, which should preclude its use in vitamins"; (3) that Healthy Hair's silica is "more common[ly]" known as "sand or glass" and "We also use silica in our Healthy Hair Skin & Nails, but because we recognize its

---

[1] The District Court has jurisdiction under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, and 1367(a).  We have jurisdiction under 28 U.S.C. § 1292(a)(1).

solubility limitations, we include our soluble organic silicon"; and (4) that QVC's reservatrol product includes 3 artificial colors, "is almost two-thirds additives," comes from *polygonum cuspidatum*, not Japanese knotweed, contains a Healthy Heart Blend, "an all but meaningless list of seven different botanicals—NONE of which states a standardization of any kind," and (in drink form) contains 4 grams of sugar per serving from "a mystery source." He also made a number of general pejorative remarks about QVC's products, calling them "ridiculous," "embarrassing," "sad," and "disturbing."

QVC sued, alleging false advertising in violation of section 43(a) of the Lanham Act, as well as bringing state-law claims. It sought an injunction against the continued publication of Lessman's blog posts. The District Court denied the injunction, finding that QVC had not shown a likelihood of success on the merits. QVC then brought the present appeal.

## II.

To determine whether to grant a preliminary injunction, "a district court must consider: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest." *Iles v. de Jongh*, 638 F.3d 169, 172 (3d Cir. 2011). We review a district court's denial of a preliminary injunction for abuse of discretion. *PennMont Securities v. Frucher*, 586 F.3d 242, 245 (3d Cir. 2009).

3

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), forbids the use in commerce of "any...false or misleading representation of fact which...misrepresents the nature, characteristics, [or] qualities...of another person's goods, services, or commercial activities." QVC alleges that Lessman's blog posts contain characterizations of its products which are false or misleading. In order to establish liability under § 43(a), QVC must show, among other elements, that Lessman's "commercial message or statement is either (1) literally false or (2) literally true or ambiguous, but has the tendency to deceive consumers." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co.*, 290 F.3d 578, 586 (3d Cir. 2002); *accord Castrol, Inc. v. Pennzoil*, 987 F.2d 939, 943 (3d Cir. 1993). The District Court analyzed Lessman's blog posts under both frameworks and concluded that QVC had not shown them to be either literally false or literally true, but with the tendency to deceive.

### A. Literal falsity

"A literally false message may be either explicit or conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated." *Novartis*, 290 F.3d 578, 587-88 (3d Cir. 2002). False-advertising jurisprudence presumes that when a defendant has made a literally false statement, consumer confusion will result. Therefore, "[w]hen consumer deception can be determined by examining the challenged name or advertising on its face, the plaintiff is excused from the burden of demonstrating actual deception through the use of a consumer survey." *Id.* at 587. However, "only an *unambiguous* message can be literally false. The greater the degree to which a message relies upon the

4

viewer...to integrate its components and draw the apparent conclusion...the less likely it is that a finding of literal falsity will be supported." *Id.* Further, while "misdescriptions or false representations of specific characteristics of a product" may be actionable, "exaggeration or overstatement expressed in broad, vague, and commendatory language," commonly known as "puffery," is not. *Castrol*, 987 F.2d at 945.

The District Court considered all the evidence and concluded that QVC had not made a showing that it was reasonably likely to demonstrate that Lessman's blog posts were literally false. In particular, the District Court found that QVC had not shown that Lessman's statements of fact—concerning the percentage of additives in QVC's Healthy HSN, the existence of a "relationship" (albeit not a causal one) between hyaluronic acid and cancer, the presence of silica in QVC's Healthy HSN, and the composition of QVC's reservatrol products—were false. QVC objects that the District Court failed to consider Lessman's factual statements in their full context, including Lessman's general negative remarks about QVC's products, but the context did not render Lessman's statements *literally false*. Whether a consumer, considering both Lessman's factual claims and his general rhetoric about QVC, might potentially be *misled* by his blog posts, must be considered separately.

Like the District Court, we find Lessman's remarks concerning the relationship between hyaluronic acid and cancer the most troubling of his statements. If his statements concerning that relationship had been literally false, his later statement that the levels of the acid in QVC's Healthy HSN were so low that it nonetheless would not have an effect would not be sufficient to save him from a finding of literal falsity. One cannot

5

escape liability for a literally false claim by pointing to a later disclaimer. *See SmithKline Beecham Cons. Healthcare, L.P., v. Johnson & Johnson-Merck Cons. Pharm. Co.*, 906 F.Supp. 178, 186 (S.D.N.Y. 1995). However, we agree with the District Court that Lessman's statements concerning hyaluronic acid, while somewhat difficult to parse, cannot be read as unambiguously false.

We defer to the District Court's factual findings in this matter, and see no basis for a holding of clear error. Given those findings, and the District Court's application of the correct legal standard, we find no abuse of discretion with respect to QVC's claims of literal falsity.

### B. Misleadingness

In contrast to claims of literal falsity, "where the advertisements are not literally false, plaintiff bears the burden of proving actual deception by a preponderance of the evidence. Hence, it cannot obtain relief by arguing how consumers *could* react; it must show how consumers *actually do* react." *Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 228-29 (3d Cir. 1990). "The success of the claim usually turns on the persuasiveness of a consumer survey." *AT&T Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1443 (3d Cir. 1994). The only evidence QVC offers for consumer reaction to Lessman's blog posts is the comments which appeared on those posts, purportedly left by consumers. The District Court examined all the sixty-odd comments posted and found that only a handful suggested that consumers had been misled into a materially false belief about QVC's products. In sum, it concluded that the evidence was

6

inadequate to show that QVC was reasonably likely to prevail on the issue of misleadingness.

We agree.[2] We also note that, even were the comments more abundant, this sort of evidence will often be of only limited value. Comments left on blog posts can be very difficult to authenticate. The use of false identities in Internet forums is now a well-known tactic for attacking corporate rivals. *See, e.g.,* Brad Stone and Matt Richtel, *The Hand That Controls the Sock Puppet Could Get Slapped*, N.Y. TIMES, July 16, 2007 ("John Mackey, the chief executive of Whole Foods Market...used a fictional identity on the Yahoo message boards for nearly eight years to assail competition and promote his supermarket chain's stock."). Even if a poster is "legitimate," doubts will often remain as to the sincerity of the comment. *See, e.g., Trolling for Your Soul*, THE ECONOMIST, Mar. 31, 2011 ("'Trolling'—posting wilfully inflammatory, off-topic or simply stupid remarks—plagues blogs and other online forums."). And, finally, even if a poster is genuine and making a comment in good faith, whether he or she would fall in to the universe of consumers whose opinions are relevant (i.e., those who are or potentially might be purchasers of the products in question) often cannot be known. *See Merisant*

---

[2] QVC argues that even a single instance of confusion may be sufficient to establish liability. However, every case it cites for this proposition concerns deception under the other branch of the Lanham Act—that is, with respect to trademark confusion. Even in that context, this proposition is not necessarily accepted. *See Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 561 F. Supp. 2d 368, 385-86 (S.D.N.Y. 2008). Giving full weight to the relevant handful of blog comments, we will not disturb the District Court's finding that they were "insufficient to satisfy plaintiff's burden that the advertising tends to deceive or mislead a substantial portion of the intended audience." *AT&T*, 42 F.3d at 1443 (internal citation omitted).

*Co. v. McNeil Nutritionals,* LLC, 242 F.R.D. 315, 319 (E.D. Pa. 2007) (citing *Pittsburgh Press Club v. United States*, 579 F.2d 751, 758 (3d Cir. 1978)).  Given these considerations, it was especially appropriate for the District Court to give the blog comments only limited weight.

Ultimately, the District Court correctly concluded that QVC had not shown on the record at the time that it was reasonably likely to prevail on the merits of this action and therefore that it was not entitled to a preliminary injunction.

### III.

For the foregoing reasons, we will affirm the decision of the District Court and remand for further proceedings.