PRESENT: All the Justices

HORACE FRAZIER HUNTER

OPINION BY
v. Record No. 121472          JUSTICE CLEO E. POWELL
February 28, 2013

VIRGINIA STATE BAR,
EX REL. THIRD DISTRICT COMMITTEE

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Kenneth R. Melvin, Alfred D. Swersky,
and Von L. Piersall, Jr., Judges Designate

In this appeal of right by an attorney from a Virginia
State Bar ("VSB") disciplinary proceeding before a three judge
panel appointed pursuant to Code § 54.1-3935, we consider
whether an attorney's blog posts are commercial speech, whether
an attorney may discuss public information related to a client
without the client's consent, and whether the panel ordered the
attorney to post a disclaimer that is insufficient under Rule
7.2(a)(3) of the Virginia Rules of Professional Conduct.

I. FACTS AND PROCEEDINGS

Horace Frazier Hunter, an attorney with the law firm of
Hunter & Lipton, PC, authors a trademarked blog[1] titled "This
Week in Richmond Criminal Defense," which is accessible from his
law firm's website, www.hunterlipton.com.  This blog, which is

_____

[1] A "blog" is a shortened, colloquial reference for the term
"weblog," and is defined as " 'a Web site that contains an
online personal journal with reflections, comments, and often
hyperlinks provided by the writer; also: the contents of such a
site.' "  White v. Baker, 696 F.Supp.2d 1289, 1310 (N.D. Ga.
2010) (quoting Merriam-Webster Online Dictionary,
http://www.merriam-webster.com/dictionary/blog (last visited
January 31, 2013)).

1

not interactive, contains posts discussing a myriad of legal issues and cases, although the overwhelming majority are posts about cases in which Hunter obtained favorable results for his clients. Nowhere in these posts or on his website did Hunter include disclaimers.

As a result of Hunter's blog posts on his website, the VSB launched an investigation. During discussions with the VSB about whether his blog constituted legal advertising, Hunter wrote a letter to the VSB offering to post <u>a disclaimer</u> on <u>one page</u> of his website:

> "<u>This Week in Richmond Criminal Defense</u> is not an advertisement[;] it is a blog. The views and opinions expressed on this blog are solely those of attorney Horace F. Hunter. The purpose of these articles is to inform the public regarding various issues involving the criminal justice system and should not be construed to suggest a similar outcome in any other case."

However, the negotiations stalled and no disclaimers were posted at that time.

On March 24, 2011, the VSB charged Hunter with violating Rules 7.1, 7.2, 7.5,[2] and 1.6 by his posts on this blog. Specifically, the VSB argued that he violated rules 7.1 and 7.2 because his blog posts discussing his criminal cases were

---

[2] The District Committee ultimately did not find by clear and convincing evidence that Hunter violated Rule 7.5 and dismissed that charge.

2

inherently misleading as they lacked disclaimers.[3]  The VSB also asserted that Hunter violated Rule 1.6 by revealing information that could embarrass or likely be detrimental to his former clients by discussing their cases on his blog without their consent.

In a hearing on October 18, 2011, the VSB presented evidence of Hunter's alleged violations.  The VSB presented a former client who testified that he did not consent to information about his cases being posted on Hunter's blog and believed that the information posted was embarrassing or detrimental to him, despite the fact that all such information had previously been revealed in court.  The VSB investigator testified that other former clients felt similarly.  The VSB also entered all of the blog posts Hunter had posted on his blog to date.  At that time, none of the posts entered contained disclaimers.  Of these thirty unique posts, only five discussed legal, policy issues.  The remaining twenty-five discussed cases.  Hunter represented the defendant in twenty-two of these cases and identified that fact in the posts.  In nineteen of these twenty-two posts, Hunter also specifically named his law firm.  One of these posts described a case where a family hired

---

[3] Although some of Hunter's blog posts now contain disclaimers, not all do and the disclaimers that are present were not added until after the VSB brought disciplinary charges against Hunter.

Hunter to represent them in a wrongful death suit and the remaining twenty-one of these posts described criminal cases. In every criminal case described, Hunter's clients were either found not guilty, plea bargained to an agreed upon disposition, or had their charges reduced or dismissed.

At the hearing, Hunter testified that he has many reasons for writing his blog - including marketing, creation of a community presence for his firm, combatting any public perception that defendants charged with crimes are guilty until proven innocent, and showing commitment to criminal law. Hunter stated that he had offered to post a disclaimer on his blog, but the offered disclaimer was not satisfactory to the VSB. Hunter admitted that he only blogged about his cases that he won. He also told the VSB that he believed that using the client's name is important to give an accurate description of what happened. Hunter told the VSB that he did not obtain consent from his clients to discuss their cases on his blog because all the information that he posted was public information.

Following the hearing, the VSB held that Hunter violated Rule 1.6 by "disseminating client confidences" obtained in the course of representation without consent to post. Specifically, the VSB found that the information in Hunter's blog posts "would be embarrassing or be likely to be detrimental" to clients and he did not receive consent from his clients to post such

4

information.  The VSB further held that Hunter violated Rule 7.1.  The VSB's conclusion that Hunter's website contained legal advertising was based on its factual finding that "[t]he postings of [Hunter's] case wins on his webpage advertise[d] cumulative case results."  Moreover, the VSB found that at least one purpose of the website was commercial.  The VSB further held that he violated Rule 7.2 by "disseminating case results in advertising without the required disclaimer" because the one that he proposed to the VSB was insufficient.  The VSB imposed a public admonition with terms including a requirement that he remove case specific content for which he has not received consent and post a disclaimer that complies with Rule 7.2(a)(3) on all case-related posts.

Hunter appealed to a three judge panel of the circuit court and the court heard argument.  The court disagreed with Hunter that de novo was the proper standard of review and instead applied the following standard: "whether the decision is contrary to the law or whether there is substantial evidence in the record upon which the district committee could reasonably have found as it did."  The court further ruled that the VSB's interpretation of Rule 1.6 violated the First Amendment and dismissed that charge.  The court held VSB's interpretation of Rules 7.1 and 7.2 do not violate the First Amendment and that the record contained substantial evidence to support the VSB's

5

determination that Hunter had violated those rules.  The court

imposed a public admonition and required Hunter to post the

following disclaimer: "Case results depend upon a variety of

factors unique to each case.  Case results do not guarantee or

predict a similar result in any future case."  This appeal

followed.

## II. ANALYSIS

A. Whether "[t]he Ruling of the Circuit Court finding a
violation of Rules 7.1(a)(4) and 7.2(a)(3) conflicts with the
First Amendment to the Constitution of the United States."

Rule 7.1(a)(4), which is the specific portion of the Rule

that the VSB argued that Hunter violated, states:

> (a) A lawyer shall not, on behalf of the lawyer
> or any other lawyer affiliated with the lawyer or
> the firm, use or participate in the use of any
> form of public communication if such
> communication contains a false, fraudulent,
> misleading, or deceptive statement or claim.  For
> example, a communication violates this Rule if
> it:
>
> . . . .
>
> (4) is likely to create an unjustified
> expectation about results the lawyer can achieve,
> or states or implies that the lawyer can achieve
> results by means that violate the Rules of
> Professional Conduct or other law.

The VSB also argues that Hunter violated the following

subsection of Rule 7.2(a)(3):

> (a) Subject to the requirements of Rules 7.1 and
> 7.3, a lawyer may advertise services through

6

written, recorded, or electronic communications, including public media. In the determination of whether an advertisement violates this Rule, the advertisement shall be considered in its entirety, including any qualifying statements or disclaimers contained therein. Notwithstanding the requirements of Rule 7.1, an advertisement violates this Rule if it:

. . . .

(3) advertises specific or cumulative case results, without a disclaimer that (i) puts the case results in a context that is not misleading; (ii) states that case results depend upon a variety of factors unique to each case; and (iii) further states that case results do not guarantee or predict a similar result in any future case undertaken by the lawyer. The disclaimer shall precede the communication of the case results. When the communication is in writing, the disclaimer shall be in bold type face and uppercase letters in a font size that is at least as large as the largest text used to advertise the specific or cumulative case results and in the same color and against the same colored background as the text used to advertise the specific or cumulative case results.

In response to these allegations, Hunter contends that speech concerning the judicial system is "quintessentially 'political speech'" which is within the marketplace of ideas. Hunter asserts that the Supreme Court of the United States has twice declined to answer whether political speech is transformed into commercial speech simply because one of multiple motives is commercial. Specifically, he argues that his blog posts are not commercial because

(1) the [Supreme Court of the United States'] formal commercial speech definitions focus

7

heavily on whether the speech does *no more* than propose a commercial transaction; (2) the [Supreme Court of the United States'] commercial speech decisions, to the extent that they discuss motivation at all, have focused on whether the speech is *solely* driven by commercial interest; (3) the [Supreme Court of the United States] has repeatedly insisted that the existence of a commercial motivation does not disqualify speech from the heightened scrutiny protection it would otherwise deserve; (4) the [Supreme Court of the United States] has warned that when commercial and political elements of speech are inextricably intertwined, the heightened protection applicable to the political speech should be applied, lest the political speech be chilled; and (5) the constitutional policy arguments that undergird the reduction of protection for commercial speech have no persuasive force when the content of the speech is political.

The VSB responds that Hunter's blog posts are inherently misleading commercial speech.

"Whether the inherent character of a statement places it beyond the protection of the First Amendment is a question of law over which . . . this Court . . . exercise[s] de novo review." Peel v. Atty. Registration & Disciplinary Comm'n, 496 U.S. 91, 108 (1990). An appellate Court must independently examine the entire record in First Amendment cases to ensure that " 'a forbidden intrusion on the field of free expression' " has not occurred. Bose Corp. v. Consumers Union of United States, Inc., 466 U.S. 485, 499 (1984) (quoting New York Times Co. v. Sullivan, 376 U.S. 254, 284-86 (1964)).

Turning to Hunter's argument that his blog posts are

8

political, rather than commercial, speech, we note that "[t]he existence of 'commercial activity, in itself, is no justification for narrowing the protection of expression secured by the First Amendment.'" Bigelow v. Virginia, 421 U.S. 809, 818 (1975) (quoting Ginsburg v. United States, 383 U.S. 463, 474 (1966)). However, when speech that is both commercial and political is combined, the resulting speech is not automatically entitled to the level of protections afforded political speech. Board of Trustees of the State University of New York v. Fox, 492 U.S. 469, 474 (1989).

While it is settled that attorney advertising is commercial speech, Bates v. State Bar of Arizona, 433 U.S. 350, 363-64 (1977), Bates and its progeny were decided in the era of traditional media. In recent years, however, advertising has taken to new forms such as websites, blogs, and other social media forums, like Facebook and Twitter. See generally Spirit Airlines, Inc. v. United States Dep't of Transp., 687 F.3d 403 (D.C. Cir. 2012); QVC Inc. v. Your Vitamins Inc., 439 Fed. Appx. 165 (3d Cir. 2011); Athleta, Inc. v. Pitbull Clothing Co., 2013 U.S. Dist. LEXIS 6867 (C.D. Cal. Jan. 7, 2013).

Thus, we must examine Hunter's speech to determine whether it is commercial speech, specifically, lawyer advertising.

> Advertising, like all public expression, may be
> subject to reasonable regulation that serves a
> legitimate public interest. To the extent that

9

> commercial activity is subject to regulation, the relationship of speech to that activity may be one factor, among others, to be considered in weighing the First Amendment interest against the governmental interest alleged.  Advertising is not thereby stripped of all First Amendment protection.  The relationship of speech to the marketplace of products or of services does not make it valueless in the marketplace of ideas.

Bigelow, 421 U.S. at 826 (internal citations omitted).  Simply because the speech is an advertisement, references a specific product, or is economically motivated does not necessarily mean that it is commercial speech.  Bolger v. Youngs Drug Products Corp., 463 U.S. 60, 67 (1983).  "The combination of all these characteristics, however, provides strong support for the . . . conclusion that [some blog posts] are properly characterized as commercial speech" even though they also discuss issues important to the public.  Id. at 67-68 (emphasis in original).

Certainly, not all advertising is necessarily commercial, e.g., public service announcements.  See id. at 66 (holding "[t]he mere fact that these pamphlets are conceded to be advertisements clearly does not compel the conclusion that they are commercial speech").  However, all commercial speech is necessarily advertising.  See Webster's Third New International Dictionary 31 (1993) (defining "advertisement" as "a calling attention to or making known[;]an informing or notifying[;] a calling to public attention[;] a statement calling attention to something[;] a public notice; esp[ecially] a paid notice or

10

announcement published in some public print (as a newspaper, periodical, poster, or handbill) or broadcast over radio or television"). Indeed, the Supreme Court of the United States has said that "[t]he diverse motives, means, and messages of advertising may make speech 'commercial' in widely varying degrees." Bigelow, 421 U.S. at 826.

Here, Hunter's blog posts, while containing some political commentary, are commercial speech. Hunter has admitted that his motivation for the blog is at least in part economic. The posts are an advertisement in that they predominately describe cases where he has received a favorable result for his client. He unquestionably references a specific product, i.e., his lawyering skills as twenty-two of his twenty-five case related posts describe cases that he has successfully handled. Indeed, in nineteen of these posts, he specifically named his law firm in addition to naming himself as counsel.

Moreover, the blog is on his law firm's commercial website rather than an independent site dedicated to the blog. See Howard J. Bashman, How Appealing Blog (Feb. 11, 2013, 9:40 AM), http://howappealing.law.com (an independent blog by a Pennsylvania appellate attorney that is accessible through Law.com at http://legalblogwatch.typepad.com/). The website

11

uses the same frame[4] for the pages openly soliciting clients as it does for the blog, including the firm name, a photograph of Hunter and his law partner, and a "contact us" form.  The homepage of the website on which Hunter posted his blog states only:

**Do you need Richmond attorneys?**

Hunter & Lipton, CP [sic] is a law practice in Richmond, Virginia specializing in litigation matters from administrative agency hearings to serious criminal cases. As experienced Richmond attorneys, we bring a genuine desire to help those who find themselves in difficult situations. Our partnership was founded on the idea that everyone, no matter what the circumstance, deserves a zealous advocate to fight on his or her behalf.

People make mistakes, and may even find themselves in situations not of their own making. And for these people, the system can be extraordinarily unforgiving and unjust—but you do not have to face this system alone.

**If you find yourself in a difficult legal situation, the Richmond attorneys of Hunter & Lipton, LLP would consider it a privilege to represent you.  Please contact our office with any questions or to schedule a consultation.**

This non-interactive blog does not allow for discourse about the cases, as non-commercial commentary often would by allowing readers to post comments.  See, e.g., Law.com Legal Blog Watch,

_____

[4] See Joan M. Reitz, Online Dictionary for Library and Information Science, http://www.abc-clio.com/ODLIS/odlis_F.aspx?#frame (last visited February 25, 2013) (defining frame as "[a] separately scrollable area in the window of a computer application or in a Web page that has been divided into more than one scrollable area").

http://legalblogwatch.typepad.com/; Above the Law,

http://abovethelaw.com/.  See also June Lester & Wallace C.

Koehler, Jr., Fundamentals of Information Studies 102 (2d ed.

2007) (observing that "[i]n contrast to the interaction possible

in some other forms of web-published information, blog readers

are most frequently permitted to leave comments and create

threads of discussion").  Instead, in furtherance of his

commercial pursuit, Hunter invites the reader to "contact us"

the same way one seeking legal representation would contact the

firm through the website.

Thus, the inclusion of five generalized, legal posts and

three discussions about cases that he did not handle on his non-

interactive blog, no more transform Hunter's otherwise self-

promotional blog posts into political speech, "than opening

sales presentations with a prayer or a Pledge of Allegiance

would convert them into religious or political speech."  Fox,

492 U.S. at 474-75.  Indeed, unlike situations and topics where

the subject matter is inherently, inextricably intertwined,

Hunter chose to comingle sporadic political statements within

his self-promoting blog posts in an attempt to camouflage the

true commercial nature of his blog.  "Advertisers should not be

permitted to immunize false or misleading product information

from government regulation simply by including references to

public issues."  Bolger, 463 U.S. at 68.  When considered as a

13

whole, the economically motivated blog overtly proposes a commercial transaction that is an advertisement of a specific product.

Having determined that Hunter's blog posts discussing his cases are commercial speech,

> we must determine whether the expression is
> protected by the First Amendment.  For commercial
> speech to come within that provision, it at least
> must concern lawful activity and not be
> misleading.  Next, we ask whether the asserted
> governmental interest is substantial.  If both
> inquiries yield positive answers, we must
> determine whether the regulation directly
> advances the governmental interest asserted, and
> whether it is not more extensive than is
> necessary to serve that interest.

Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n, 447 U.S. 557, 566 (1980); Adams Outdoor Advertising v. City of Newport News, 236 Va. 370, 383, 373 S.E.2d 917, 923 (1988).

The VSB does not contend, nor does the record indicate, that Hunter's posts do not concern lawful activity; rather, the VSB argues that the posts are inherently misleading.  While we do not hold that the blog posts are inherently misleading, we do conclude that they have the potential to be misleading. "[B]ecause the public lacks sophistication concerning legal services, misstatements that might be overlooked or deemed unimportant in other advertising may be found quite inappropriate in legal advertising."  Bates, 433 U.S. at 383. Of the thirty posts that were on his blog at the time of the VSB

14

hearing, twenty-two posts named himself as counsel and discussed cases that he handled. With one exception, in all of these posts, he described the successful results that he obtained for his clients.[5] While the States may place an absolute prohibition on inherently misleading advertising, "the States may not place an absolute prohibition on certain types of potentially misleading information, . . . if the information also may be presented in a way that is not deceptive." In re R.M.J., 455 U.S. 191, 203 (1982). Here, the VSB's own remedy of requiring Hunter to post disclaimers on his blog posts demonstrates that the information could be presented in a way that is not misleading or deceptive.

Thus, we must examine whether the VSB has a substantial governmental interest in regulating these blog posts. Central Hudson, 447 U.S. at 566. The Supreme Court of the United States has recognized that " '[i]f the naiveté of the public will cause advertising by attorneys to be misleading, then it is the bar's role to assure that the populace is sufficiently informed as to enable it to place advertising in its proper perspective.' " Peel, 496 U.S. at 110 (quoting Bates, 433 U.S. at 375). Indeed, the Supreme Court of the United States expressed concern that

---

[5] In the one case that he does not describe favorable results he has received, he discusses how he has been retained by a family in a wrongful death lawsuit against a police department.

15

the public may lack the sophistication to discern misstatements as to the quality of a lawyer's services. Bates, 433 U.S. at 383. Therefore, the VSB has a substantial governmental interest in protecting the public from an attorney's self-promoting representations that could lead the public to mistakenly believe that they are guaranteed to obtain the same positive results if they were to hire Hunter.

Because the VSB's governmental interest is substantial, we must now determine "whether the regulation directly advances the governmental interest asserted." Central Hudson, 447 U.S. at 566. The VSB's regulations permit blog posts that discuss specific or cumulative case results but require a disclaimer to explain to the public that no results are guaranteed. Rules 7.1 and 7.2. This requirement directly advances the VSB's governmental interest.

Finally, we must determine whether the VSB's regulations are no more restrictive than necessary. Central Hudson, 447 U.S. at 566. The Supreme Court of the United States has approved the use of disclaimers or explanations. Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio, 471 U.S. 626, 651 (1985); In re R.M.J., 455 U.S. at 203; Bates, 433 U.S. at 384. The disclaimers mandated by the VSB

> shall precede the communication of the case
> results. When the communication is in writing,
> the disclaimer shall be in bold type face and

16

uppercase letters in a font size that is at least as large as the largest text used to advertise the specific or cumulative case results and in the same color and against the same colored background as the text used to advertise the specific or cumulative case results.

Rule 7.2(a)(3).  This requirement ensures that the disclaimer is noticeable and would be connected to each post so that any member of the public who may use the website addresses to directly access Hunter's posts would be in a position to see the disclaimer.  Therefore, we hold that the disclaimers required by the VSB are "not more extensive than is necessary to serve that interest."  Central Hudson, 447 U.S. at 566.

Hunter's blog posts discuss lawful activity and are not inherently misleading, but the VSB has asserted a substantial governmental interest to protect the public from potentially misleading lawyer advertising.  See Central Hudson, 447 U.S. at 566.  These regulations directly advance this interest and are not more restrictive than necessary, unlike outright bans on advertising.  Id.  We thus conclude that the VSB's Rules 7.1 and 7.2 do not violate the First Amendment.  As applied to Hunter's blog posts, they are constitutional and the panel did not err.

B. Whether the circuit court erred in holding that the VSB's application of Rule 1.6 to Hunter's blog violated his First Amendment rights.

Rule 1.6(a) states, that with limited exceptions,

[a] lawyer shall not reveal information protected by the attorney-client privilege under applicable

17

> law or other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation . . . .

The VSB argues that the circuit court erred in holding that its interpretation of Rule 1.6 violates the First Amendment and that Hunter violated that rule by disclosing potentially embarrassing information about his clients on his blog "in order to advance his personal economic interests." VSB argues that lawyers, as officers of the Court, are prohibited from engaging in speech that might otherwise be constitutionally protected. Thus, the VSB's interpretation of Rule 1.6 involves two types of information: 1) that which is protected by the attorney-client privilege, and 2) that which is public information but is embarrassing or likely to be detrimental to the client. Hunter is charged with disseminating the later type of information. In response to these allegations, Hunter argues that the VSB's interpretation of Rule 1.6 is unconstitutional because the matters discussed in his blogs had previously been revealed in public judicial proceedings and, therefore, as concluded matters, were protected by the First Amendment. Thus, we are called upon to answer whether the state may prohibit an attorney from discussing information about a client or former client that

18

is not protected by attorney-client privilege without express consent from that client. We agree with Hunter that it may not.

The cases cited by VSB in support of its position differ from this case in a substantial way; the cases relied upon by VSB involve pending proceedings. It is settled that attorney speech about public information from cases is protected by the First Amendment, but it may be regulated if it poses a substantial likelihood of materially prejudicing a <u>pending</u> case. <u>Gentile v. State Bar of Nevada</u>, 501 U.S. 1030, 1076 (1991).

"[A] presumption of openness inheres in the very nature of a criminal trial under our system of justice." <u>Richmond Newspapers, Inc. v. Virginia</u>, 448 U.S. 555, 573 (1980). Moreover,

> [a] trial is a public event. What transpires in the court room is public property. If a transcript of the court proceedings had been published, we suppose none would claim that the judge could punish the publisher for contempt. And we can see no difference though the conduct of the attorneys, of the jury or even of the judge himself, may have reflected on the court. Those who see and hear what transpired can report it with impunity. There is no special perquisite of the judiciary which enables it, as distinguished from other institutions of democratic government, to suppress, edit, or censor events which transpire in proceedings before it.

<u>Craig v. Harney</u>, 331 U.S. 367, 374 (1947). All of Hunter's blog posts involved cases that had been concluded. Moreover, the VSB concedes that all of the information that was contained within

19

Hunter's blog was public information and would have been protected speech had the news media or others disseminated it. In deciding whether the circuit court erred, we are required to make our "own inquiry into the imminence and magnitude of the danger said to flow from the particular utterance and then to balance the character of the evil, as well as its likelihood, against the need for free and unfettered expression." Landmark Communications, Inc. v. Virginia, 435 U.S. 829, 843 (1978). "At the very least, [the] cases recognize that disciplinary rules governing the legal profession cannot punish activity protected by the First Amendment, and that First Amendment protection survives even when the attorney violates a disciplinary rule he swore to obey when admitted to the practice of law." Gentile, 501 U.S. at 1054. The VSB's interpretation of Rule 1.6 fails these standards even when we

> balance "whether the 'practice in question [furthers] an important or substantial governmental interest unrelated to the suppression of expression' and whether 'the limitation of First Amendment freedoms is no greater than is necessary or essential to the protection of the particular governmental interest involved,' "

Id. (quoting Seattle Times Co. v. Rhinehart, 467 U.S. 20, 32 (1984)). State action that punishes the publication of truthful information can rarely survive constitutional scrutiny. Smith v. Daily Mail Pub. Co., 443 U.S. 97, 102 (1979).

20

The VSB argues that it can prohibit an attorney from repeating truthful information made in a public judicial proceeding even though others can disseminate this information because an attorney repeating it could inhibit clients from freely communicating with their attorneys or because it would undermine public confidence in the legal profession.  Such concerns, however, are unsupported by the evidence.  To the extent that the information is aired in a public forum, privacy considerations must yield to First Amendment protections.  In that respect, a lawyer is no more prohibited than any other citizen from reporting what transpired in the courtroom.  Thus, the circuit court did not err in concluding that the VSB's interpretation of Rule 1.6 violated the First Amendment.

C. Whether the circuit court erred in requiring Hunter to post a disclaimer on his website that does not comply with the requirements of Rule 7.2(3) and therefore does not eliminate the misleading nature of his blog posts.

The VSB argues that the single disclaimer that the circuit court ordered Hunter to post on his blog was insufficient to comport with Rule 7.2(a)(3) because it did not eliminate the misleading nature of the posts.

As we have already concluded, Hunter's blogs are commercial speech and, thus, constitute lawyer advertising.  When advertising cumulative or specific case results, Rule 7.2 requires that a disclaimer

21

shall be in bold type face and uppercase letters
in a font size that is at least as large as the
largest text used to advertise the specific or
cumulative case results and in the same color and
against the same colored background as the text
used to advertise the specific or cumulative case
results.

Rule 7.2(a)(3).

Here, the VSB required Hunter to post a disclaimer that
complies with Rule 7.2(a)(3) on all case-related posts.  This
means that Hunter's disclaimers "shall be in bold type face and
uppercase letters in a font size that is at least as large as
the largest text used to advertise the specific or cumulative
case results and in the same color and against the same colored
background as the text used to advertise the specific or
cumulative case results."  Rule 7.2(a)(3).  The circuit court,
however, imposed the following disclaimer to be posted once:
"Case results depend upon a variety of factors unique to each
case.  Case results do not guarantee or predict a similar result
in any future case."

While the substantive meaning of the imposed disclaimer may
conform to the requirements stated in Rule 7.2(a)(3)(i) through
(iii), it nevertheless is less than what the rule requires.  In
contrast to the committee's determination, there is no provision
in the circuit court's order requiring that the disclaimer be
formatted and presented in the manner required by Rule
7.2(a)(3), and the text of the disclaimer prescribed by the

22

circuit court is not itself formatted and presented in that manner. Even so, Hunter does not argue that the disclaimer required by the circuit court is an appropriate, less restrictive means of regulating his speech and, therefore, we decline to so hold. Based on the arguments presented to it, the circuit court erred by imposing a disclaimer that conflicted with the rule. See, e.g., Rosillo v. Winters, 235 Va. 268, 272, 367 S.E.2d 717, 719 (1988) (concluding that a circuit court abuses its discretion by "enter[ing an] order . . . dispens[ing] with the requirements of [a] Rule"); Zaug v. Virginia State Bar, 285 Va. ___, ___, ___ S.E.2d ___, ___ (2013) (this day decided) ("The Virginia Rules of Professional Conduct are Rules of this Court.").

## III. CONCLUSION

For the foregoing reasons, we hold that Hunter's blog posts are potentially misleading commercial speech that the VSB may regulate. We further hold that circuit court did not err in determining that the VSB's interpretation of Rule 1.6 violated the First Amendment. Finally, we hold that because the circuit court erred in imposing one disclaimer did not fully comply with Rule 7.2(a)(3), we reverse and remand for imposition of disclaimers that fully comply with that Rule.

Affirmed in part,
reversed in part,
and remanded.

23

JUSTICE LEMONS, with whom JUSTICE McCLANAHAN joins, dissenting in part.

I agree with the majority's resolution of the Rule 1.6 issue.  However, I dissent from the majority's determination that Hunter is guilty of violating Rules 7.1(a)(4) and 7.2(a)(3) and that Hunter must post a disclaimer that complies with Rule 7.2(a)(3).

Rule 7.1 governs communications concerning a lawyer's services.  Rule 7.1(a)(4) states:

> (a) A lawyer shall not, on behalf of the lawyer or any other lawyer affiliated with the lawyer or the firm, use or participate in the use of any form of public communication if such communication contains a false, fraudulent, misleading, or deceptive statement or claim.  For example, a communication violates this Rule if it:
>
> . . . .
>
> (4) is likely to create an unjustified expectation about results the lawyer can achieve, or states or implies that the lawyer can achieve results by means that violate the Rules of Professional Conduct or other law.

Rule 7.2 is only applicable to advertisements.  Rule 7.2(a)(3) states:

> (a) Subject to the requirements of Rules 7.1 and 7.3, a lawyer may advertise services through written, recorded, or electronic communications, including public media.  In the determination of whether an advertisement violates this Rule, the advertisement shall be considered in its

24

entirety, including any qualifying statements or disclaimers contained therein. Notwithstanding the requirements of Rule 7.1, an advertisement violates this Rule if it:

. . . .

(3) advertises specific or cumulative case results, without a disclaimer that (i) puts the case results in a context that is not misleading; (ii) states that case results depend upon a variety of factors unique to each case; and (iii) further states that case results do not guarantee or predict a similar result in any future case undertaken by the lawyer. The disclaimer shall precede the communication of the case results. When the communication is in writing, the disclaimer shall be in bold type face and uppercase letters in a font size that is at least as large as the largest text used to advertise the specific or cumulative case results and in the same color and against the same colored background as the text used to advertise the specific or cumulative case results.

Hunter's blog contains articles about legal and policy issues in the news, as well as detailed descriptions of criminal trials, the majority of which are cases where Hunter was the defense attorney. The articles also contain Hunter's commentary and critique of the criminal justice system. He uses the case descriptions to illustrate his views.

## The First Amendment

I believe that the articles on Hunter's blog are political speech that is protected by the First Amendment. The Bar concedes that if Hunter's blog is political speech, the First

25

Amendment protects him and the Bar cannot force Hunter to post an advertising disclaimer on his blog.

Speech concerning the criminal justice system has always been viewed as political speech. "[I]t would be difficult to single out any aspect of government of higher concern and importance to the people than the manner in which criminal trials are conducted." Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 575 (1980). As political speech, Hunter uses his blog to give detailed descriptions of how criminal trials in Virginia are conducted. He notes how the acquittal of some of his clients has exposed flaws in the criminal justice system.

The majority asserts that because Hunter only discusses his victories, his blog is commercial. The majority does not give sufficient credit to the fact that Hunter uses the outcome of his cases to illustrate his views of the system. Hunter testified that one of the reasons he maintained the blog was to combat "the public perception that is clearly on the side that people are guilty until they're proven innocent." For example, when discussing one of the cases where his client was found not guilty, he concludes the post by explaining that this case is an "example of how innocent people are often accused of committing some of the most serious crimes. That is why it is important not to judge the guilt of an individual until all the evidence has been presented both for and against him."

The majority compares Hunter's detailed discussion of criminal trials and how these outcomes illustrate the need to hold government to its burden of proof, with "opening [a] sales presentation[] with a prayer or a Pledge of Allegiance." The majority proposes that his blog is not transformed into political speech simply because he included eight posts about legal issues and cases he was not involved in.  However, the twenty-two posts discussing criminal trials in Virginia are political speech in their own right, and are not dependent upon the content of the other eight posts.

The majority also focuses on the location of Hunter's blog, and asserts that because the blog is accessed through the law firm's website and is not interactive, that demonstrates the blog is commercial in nature.  While going through the law firm's website is one way to access the blog, it is also possible to go directly to the blog without navigating through the firm's website.  Further, the fact that the blog is not interactive in no way commercializes the speech.

Many businesses have websites.  It is not uncommon for websites to include links to related news articles or editorials.  Merely because an article may be accessed through a commercial portal does not change the content of the article. It is the content of speech and the motivation of the speaker

that determines the level of protection to which speech is entitled.

Hunter conceded that one of the purposes of the blog was marketing. Although the United States Supreme Court has never clearly decided whether political speech is transformed into commercial speech because one of the multiple motivations of the speaker is marketing and self-promotion, its jurisprudence leads to the conclusion that Hunter's speech is not commercial.

The traditional test for determining whether speech is commercial is if the speech "[does] no more than propose a commercial transaction." Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations, 413 U.S. 376, 385 (1973)(emphasis added); Virginia Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc., 425 U.S. 748, 762 (1976); Board of Trustees of the State Univ. of N.Y. v. Fox, 492 U.S. 469, 473-74 (1989). Hunter's articles clearly do more than propose a commercial transaction. They contain detailed discussions of criminal trials in this Commonwealth, and Hunter's commentary and critique of the criminal justice system.

The United States Supreme Court has held that commercial speech is "expression related solely to the economic interests of the speaker and its audience." Central Hudson Gas & Elec. Corp. v. Public Service Comm'n. of N.Y., 447 U.S. 557, 561 (1980) (emphasis added). Marketing is not Hunter's sole

28

motivation for maintaining this blog.  As discussed above, one of Hunter's motivations in maintaining the blog is to disseminate information about "the criminal justice system, the criminal trials and the manner in which the government prosecutes its citizens."

Even if marketing was Hunter's sole motivation, economic motivation cannot be the basis for determining whether otherwise political speech is protected.  The United States Supreme Court recognized in Pittsburgh Press Co. that merely having some economic motivation does not create a basis for regulation.  "If a newspaper's profit motive were determinative, all aspects of its operations – from the selection of news stories to the choice of editorial position – would be subject to regulation if it could be established that they were conducted with a view toward increased sales.  Such a basis for regulation clearly would be incompatible with the First Amendment."  413 U.S. at 385.

The mere existence of some commercial motivation does not change otherwise political speech into commercial speech. "[S]peech does not lose its First Amendment protection because money is spent to project it, as in a paid advertisement of one form or another."  Virginia Pharmacy, 425 U.S. at 761.  In discussing the economic motivations at issue in Sorrell v. IMS Health, Inc., 564 U.S. __, 131 S.Ct. 2653 (2011), the United

States Supreme Court recognized that "[w]hile the burdened speech results from an economic motive, so too does a great deal of vital expression."  Id. at 2665.

Even if there is some commercial content to Hunter's speech, any commercial content is intertwined with political speech.  When commercial and political elements are intertwined in speech, the heightened scrutiny test must apply to all of the speech.

> It is not clear that a professional's speech is necessarily commercial whenever it relates to that person's financial motivation for speaking. But even assuming, without deciding, that such speech in the abstract is indeed merely "commercial," we do not believe that the speech retains its commercial character when it is inextricably intertwined with otherwise fully protected speech.  Our lodestars in deciding what level of scrutiny to apply to a compelled statement must be the nature of the speech taken as a whole and the effect of the compelled statement thereon.

Riley v. National Federation of the Blind of N.C., Inc., 487 U.S. 781, 795-96 (1988) (internal citation omitted).

In this case, the policies the Bar advances have no persuasive force when applied to Hunter's blog.  The purposes of Rules 7.1 and 7.2 are to protect the public from misleading communications and advertisements concerning a lawyer's services.  Hunter's articles contain detailed descriptions of the trials, along with his commentary on the criminal justice system.  The Bar produced no evidence that anyone has found

Hunter's articles to be misleading. There appears to be little benefit, if any, to the public by requiring Hunter to post a disclaimer that concedes his articles are advertisements. Hunter disagrees that his articles are advertisements, and claims they are political speech. He objects to cheapening his political speech by denominating it as advertisement material.

Accordingly, I would hold that Hunter's speech is political, is entitled to the heightened scrutiny test, and that he cannot be forced to include the advertising disclaimer under Rule 7.2 that the Bar seeks to force upon his writings.